## IMPORTERS' & TRADERS' BANK v. PETERS et al.[1]

### (Supreme Court, General Term, First Department. January 28, 1889.)

1. BANKS AND BANKING—COLLECTIONS—RECEIPT OF DRAFT BY INSOLVENT BANK.

Where a national bank was hopelessly insolvent, to the knowledge of its officers, who had been notified by the comptroller of the currency to make good a certain deficiency, and who made no efforts to comply with such directions, the receipt of a draft offered by a depositor by the bank was a fraud on the depositor, and he was entitled to recover the proceeds of the draft so long as he could trace them, wherever they might be found.

2. SAME—IDENTIFICATION OF FUND.

The draft was sent by the insolvent bank to plaintiff for collection along with other drafts, and was collected before the failure of the sender, and the proceeds were passed to its credit. Prior to such remittance the insolvent bank had a considerable sum to its credit with plaintiff. *Held,* that payment by plaintiff of drafts against the insolvent's account would be charged against moneys belonging to latter realized from other sources than the draft in question, as between such insolvent and the depositor, and that the depositor was entitled to recover any balance left of such account, deducting remittances made by the insolvent to the plaintiff after the draft was collected, and after payments by plaintiff on account of such insolvent had ceased.

3. SAME—ACCEPTING DIVIDEND FROM RECEIVER—WAIVER.

The fact that such depositor had filed his claim on account of such draft with the receiver of the insolvent bank, and had accepted and retained a dividend upon such claim, did not preclude him from asserting his claim against the funds in the hands of plaintiff, where, after acquiring notice of the circumstances under which the draft had been received by the insolvent, he repudiated the claim which he had filed with the receiver, and the dividend retained by him did not exceed the amount which he was entitled to receive from the receiver in any event.

Appeal from special term, New York county.

Action by Importers' & Traders' Bank of New York against William H. Peters, as receiver of the Exchange National Bank of Norfolk, Va., and Everett Bros., Gibson & Co. Judgment was rendered for the last-named defendant, and the receiver appeals.

Argued before VAN BRUNT, P. J., and BRADY and MACOMBER, JJ.

*Wingate & Cullen,* for appellant. *Shipman, Barlow, Larocque & Choate,* for respondent.

VAN BRUNT, P. J. This action was one of interpleader brought by the Importers' & Traders' Bank against two claimants of a fund in the hands of the plaintiff. An interlocutory judgment was entered in October. 1885, under which the plaintiff, upon paying into court the sum of $7,207.36, the amount of the fund, was relieved from further liability to either defendant, and the action was continued between the defendants for the purpose of determining the rights of the defendants, respectively, to the fund in court.

The respondents claim the fund as being the balance remaining unappropriated of the proceeds of a sight draft drawn by them on Murchison & Co. for $12,303.52, which draft was deposited by them on the 30th of March, 1885, with the Exchange National Bank of Norfolk, for collection for their account. Their claim is also founded upon the fact that, at the time of the deposit of the said draft, said Exchange National Bank was hopelessly insolvent, to the knowledge of its officers, and that the receipt of the draft under the circumstances was a fraud. It was claimed upon the part of the respond-

[1]Affirming 1 N. Y. Supp. 89.

ents that, at the time of the opening of their account with the bank, it was understood and agreed between the respondents and the officers of the bank that out-of-town drafts which were deposited by the respondents should not be drawn against until collected, and that the business with the bank on the part of the respondent was always conducted on the foundation of this agreement. The learned court who tried this case found the existence of such an agreement, and there was perhaps sufficient evidence in the case to justify this finding, although the conduct of the plaintiffs after the failure would seem to have been inconsistent with its existence. It is true that it was sought to be established upon the part of the officers of the bank that this was not the course of dealing between the parties, put that out-of-town drafts deposited were credited at once to the respondents, and could be drawn against by them. It did not appear, however, that any drafts of this kind ever had been made by the respondents, and therefore the truth of the statement upon either side cannot be determined by the actual practice of the parties. Whether this finding be sustained or not, the conclusion at which the court arrived, that the receipt of the draft by the bank under the circumstances was a fraud upon the respondents, was amply supported by the evidence. The Norfolk bank had for a long time been hopelessly insolvent by reason of the depredations committed by its officers. On the 15th of March the bank had been notified by the comptroller of the currency that the deficit must be made good. No efforts whatever were made to comply with the directions of the comptroller, and the officers knew that the bank might be compelled to cease their business at any moment, and, under this condition of affairs, there was not the slightest reason to believe that they would be able to continue their business. Applying the principles enunciated in the case *Anon.*, 67 N. Y. 598, it is clear that the receipt of the draft from the respondent under this state of facts was a fraud upon them, and the bank thereby acquired no title whatever to its proceeds. This draft, with others, was sent on for the purpose of collection to the Importers' & Traders' Bank of New York, the plaintiffs in this action. The total amount of the remittance was $17,734.36, and was received by the plaintiff on the afternoon of March 31, 1885. On the morning of the 1st of April the draft was collected by the plaintiffs, and on the morning of the 2d of April, before the Norfolk bank had received any notice of the payment of the draft in question, or could have received notice in the due course of business, it failed.

It was urged at great length by the attorney for the appellant that, in the due course of business, the Norfolk bank must have received notice of the non-collection of this draft, if it had been protested; but it will be seen that such argument is not correct. Even if the draft had been presented on the 31st of March, which the Norfolk bank had no reason to suppose would be the course of business, yet the notice of protest could not have been mailed until the 1st of April, and could not have been received by the Norfolk bank until the morning of the 2d of April, at which time its doors were closed, and it had ceased to do business. On the morning of the 1st of April it appears that the Norfolk bank had to its credit in the hands of the plaintiff $5,142.66. Upon that day this credit was increased by remittances made by the Norfolk bank by the sum of $17,734.36, including the draft in question, and that at the close of business on April 1st the plaintiff had to its credit the sum of $9,349.48. On the 2d of April the plaintiff received and credited to the Norfolk bank $964.77, and on the same day paid out before it heard of the failure $4,964.80; the balance at the close of business on the 2d of April being $5,349.45. On the 3d of April the plaintiff credited the Norfolk bank $1,705.26, consisting of checks or drafts mailed to them on April 1st, and which were received on the 2d, but were not considered available by the bank until the morning of the 3d, making the balance with a couple of other small items the amount which forms the subject-matter of this action.

In the disposition of this case it is not at all necessary that the decision be based upon the agreement alleged to have been made by the respondents with the officers of the Norfolk bank at the time of the opening of this account. The receipt of the draft by the bank on the 30th of March, in the hopeless condition of insolvency in which it then was, the officers of the bank knowing that its doors might be closed at any moment, and having no idea of being able to continue in business, was a fraud upon the respondents; and the Norfolk bank became the trustees of the respondents for the purpose of the collection of this draft; and as long as the respondents can trace this draft or its proceeds, they are entitled to recover the same from the representative of such bank. In none of the cases which have been cited have the circumstances which are apparent upon the face of the evidence in this case been present. There never was such a hopeless condition of insolvency. There was not present the certainty of being required to close their doors within a short period of time. There never existed in any of these cases the fact that there was not a possibility of the bank continuing its business. As already said, these facts bring the case directly within the decision of the court of appeals in 67 N. Y. above referred to. Under these circumstances, until the Norfolk bank had received the proceeds of this draft, and had mingled it with its funds so that it could not possibly be traced, the respondents had the right to claim these proceeds wherever it might find them. In the case at bar a certain portion of the proceeds had been left in the hands of the plaintiff. It is true that various drafts had been made against this account; but, upon an examination of the account, and applying the ordinary rules in the application of drafts, it will appear that the balance which is now on hand consisted of the balance which remained arising from the collection of the respondents' draft, together with the $1,705.26 collected April 3d. Moneys were received, and payments were made, and, as between the respondents and the Norfolk bank, who are the only parties here represented, and who are the only parties complaining, the principle which would be applied necessarily must be that drafts must be charged against the moneys belonging to the Norfolk bank rather than against those moneys which they had fraudulently obtained possession of belonging to the respondents.

The claim that, because the cashier of the bank had testified, or would testify, that this draft had been credited as cash upon the books of the bank, and that it would have honored the draft of the respondents against it, in no way affected the officers of the Norfolk bank. It is not what they would have done, but what they could have been compelled to do, which is to govern the legal relations between the parties. The claim that the persons who had deposited the other checks and drafts with the Norfolk bank might possibly have some claims, in no way affects the question now before the court, because none of such persons have presented any such claims, and they have all proven their claims against the receiver in one form or another.

It is urged, however, that because the respondents proved their claims, and accepted a dividend, they are estopped from making the claim which they now assert. That may be true in respect to the agreement which it is alleged was made at the time of the account between the officers of the bank and the respondents, because they must have known under that agreement that the bank had no title to the draft, and their subsequent discovery of the hopeless insolvency of the bank in no way affected their claim arising under the agreement. But it is very different in respect to their claim arising because of the fraudulent acts of the officers of the bank. It appears that the respondents repudiated the claim which they had made upon the discovery of the frauds which had been perpetrated upon them, and the fact that the bank had been hopelessly insolvent at the time of the receipt of the draft, and it nowhere appears but that this rescission was promptly made within a reasonable time after the discovery of the frauds referred to. It is true that they did not, at

the time of this rescission, return the amount of the dividend they had received upon their claim presented to the receiver upon the draft in question, but it was not necessary, under the circumstances of this case, that such an offer to return should be made; because, at the time of the rescission there was lying in the receiver's hands an amount appropriated to a second dividend upon their claim against the bank, including the draft in question, from which they authorized the receiver to deduct the amount which they had already received as a dividend upon this draft, and they declined to receive any more from this second dividend than the balance which would arise after deducting the amount of the first dividend, and they refused to receive any part of the second dividend which had been declared upon this draft. The rule undoubtedly is that where a party attempts to rescind he must restore all that he got arising from the transaction which is sought to be rescinded. But there are exceptions to that rule; and, where the party in any event would be entitled to receive from the party against whom the rescission is made more than the money he has on hand, he is not bound to return the money which he has received. This principle is distinctly recognized in *Allerton* v. *Allerton,* 50 N. Y. 670.

The receiver, therefore, having in his hands money belonging to the respondents which they were entitled to receive as a dividend upon the balance of their claim after deducting therefrom the dividend upon this draft which they had received, and deducting also the second dividend which had been declined, they were under no obligation to return the money received, because it would be simply paying the money over to the receiver with one hand, and collecting it back again with the other. Under all the circumstances, therefore, it would appear that the respondents were equitably entitled to enforce their claim for the balance of the money remaining in the plaintiff's bank which was part and parcel of the proceeds of the draft which said bank had collected, and which belonged to them because of the fraud which had been perpetrated in the receipt of the draft, whether for collection or on deposit. They are not entitled, however, to claim the whole of the balance which remained in the hands of the Importers' & Traders' Bank, because it is evident that the whole of such balance was not proceeds of the plaintiff's draft, as, subsequent to the collection of this draft, the balance standing to the credit of the Norfolk bank had been brought down to $5,349.45, which was all that remained unappropriated of such proceeds, and it is only this sum that the respondents can claim as belonging to them. If the respondents will stipulate to modify the judgment by reducing the recovery to the sum of $5,349.45, with interest applicable to this sum, the judgment, as modified, will be affirmed, without costs; otherwise the judgment will be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.